UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ███████████, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-1177 (RDM) |
| | ) | |
| CONSUMER FINANCIAL | ) | |
| PROTECTION BUREAU, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>AMENDED MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiffs' motion to Seal Case (Dkt. 1).  For the reasons stated below, the motion is **GRANTED** in part and **DENIED** in part.

### I.  BACKGROUND

Plaintiffs are businesses and an individual who provide services related to consumer credit counseling and are currently under investigation by Defendant, the Consumer Financial Protection Bureau ("CFPB").  Dkt. 3 ¶¶ 4-9, 23.  This litigation centers on Plaintiffs' relationship with ███████, a California-licensed attorney.  Plaintiffs allege that ████████ "has been counsel to Plaintiffs since 2012 and was intimately involved in providing legal representation to all Plaintiffs." *Id.* ¶ 13.  They also allege that ████████ is the sole owner and operator of ████ ████████, which is Plaintiffs' "longtime business partner." *Id.* ¶ 16.

On December 29, 2015, the CFPB issued a "Civil Investigative Demand," or "CID," to ████████.  A CID is "a form of administrative subpoena that may direct the recipient to produce documents or other materials or to provide information or oral testimony." *Morgan*

*Drexen, Inc. v. CFPB*, 979 F. Supp. 2d 104, 107 (D.D.C. 2013).  It subsequently issued a CID to

one of the Plaintiff entities on January 5, 2015, and, on June 16, 2015, it advised Plaintiffs that it

was "considering enforcement action against" each of them, as well as against at least one entity

that is not a party here.  *Id.* ¶¶ 19, 23.  According to Plaintiffs, they learned on July 10, 2015, that

███████ had agreed "to voluntarily provide testimony" to the CFPB at a July 23, 2015,

"voluntary investigational hearing"—a proceeding that the parties liken to a deposition.  *Id.* ¶ 25.

Plaintiffs' counsel subsequently requested permission from an attorney at the CFPB to attend the

voluntary investigational hearing, arguing that their presence was necessary to "protect the

lawful privileges held by their clients . . . and protect against inadvertent waiver of those

privileges." *Id.* ¶ 26.  Counsel for the CFPB denied the request.  Plaintiffs then filed a petition

with the CFPB seeking the same relief. *Id.* ¶ 31.  That petition was denied on July 20, 2015. *Id.*

¶ 32.

Plaintiffs filed this lawsuit on July 22, 2015.  Their complaint alleges that the CFPB's

decision not to allow Plaintiffs' counsel to attend the voluntary investigational hearing must be

set aside under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*  Dkt. 3 ¶¶ 49-61. That

same day, Plaintiffs filed an application for a temporary restraining order ("TRO") seeking an

injunction barring the CFPB from "proceeding with its planned voluntary investigational hearing

of Plaintiffs' attorney . . . without Plaintiffs' being present to assert and protect their valid

attorney-client privilege." Dkt. 4 at 12.

Accompanying their complaint and TRO application, Plaintiffs filed a motion to seal the

case. Dkt. 1.  They argue that sealing is appropriate because CFPB investigations are normally

nonpublic and sealing the case will "protect the Plaintiffs from the serious harm that would result

if [their] identity as the subject[s] of an ongoing investigation were to be disclosed to the public

at large." *Id.* at 1.  The CFPB opposes the motion, arguing that Plaintiffs have not overcome the

"'strong presumption in favor of public access to judicial proceedings.'" Dkt. 7 at 1 (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)). On July 22, 2015—the day the case and the motion to seal were filed—Acting Chief Judge Emmet G. Sullivan ordered the case temporarily sealed "without prejudice to further consideration by the United States District Judge to whom this case is randomly assigned." Dkt. 2. The case was randomly assigned to Judge Randolph D. Moss later that day.

The Court held an evidentiary hearing on the TRO application on July 23, 2015. Events at the hearing largely mooted the case, and, on August 6, 2015, Plaintiffs filed a notice of voluntary dismissal without prejudice. Dkt. 13. All that remains is for the Court to determine whether this matter should remain under seal.

## II. LEGAL STANDARDS

When determining whether court records should be sealed, courts in this Circuit apply the six-factor test set out in *United States v. Hubbard*, 650 F.2d 293, 317-21 (D.C. Cir. 1980):

> (1) the need for public access to the documents at issue; (2) the extent to which the public had access to the document prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purpose for which the documents were introduced.

*TIG Ins. Co. v. Firemen's Ins. Co. of Washington, D.C.*, 718 F. Supp. 2d 90, 95 (D.D.C. 2010) (citation omitted). Whether judicial records should be made public is a matter "best left to the sound discretion of the trial court," and the court's discretion is "to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978).

## III.  DISCUSSION

### A.  The Need for Public Access to the Documents at Issue

The documents here are court records from a lawsuit brought against the United States government.  There is a "strong presumption in favor of public access to judicial proceedings." *EEOC v. Nat'l Children's Ctr.*, 98 F.3d at 1409.  Additionally, as the CFPB argues, "in cases where the government is a party, the appropriateness of making court files accessible is enhanced." *Friedman v. Sebelius*, 672 F. Supp 2d 54, 58 (D.D.C. 2009) (alterations and quotation marks omitted).  Plaintiffs' contrary contention that "this information is presumptively non-public" (Dkt. 1 at 3) is incorrect—whatever the CFPB's typical practices are with respect to identifying entities that are under investigation, judicial proceedings are normally open to the public.  Moreover, unlike in *Hubbard*, where only a small subset of documents introduced in the course of litigation were subject to sealing (*see* 650 F.2d at 317-18), Plaintiffs here move to seal the entire proceeding and would thus deny the public even the most basic knowledge of its subject matter.  Under this circumstance, the Court concludes that the public interest weighs strongly in favor of unsealing the case.

### B.  The Extent to Which the Public Had Access to the Document Prior to the Sealing Order

The information Plaintiffs seek to protect is the fact that they are the subject of an investigation by the CFPB.  There is no indication in the record that this information was public before this case was provisionally sealed.  Thus, there is "no previous access to weigh in favor of" unsealing.  *Hubbard*, 650 F.2d at 318-19.

The CFPB points to the fact that Plaintiffs filed a petition with the agency prior to filing this lawsuit, and argues that that petition is part of the "public record."  Dkt. 7 at 3.  It also notes that when an entity files a "petition for an order modifying or setting aside a civil investigative

demand," the party may request confidential treatment "at the time the petition is filed." 12 C.F.R. § 1080.6(e), (g). It is undisputed that Plaintiffs did not seek confidential treatment when they submitted their petition, although the parties disagree as to whether Plaintiffs' petition was in fact governed by that regulation.

It does not appear, however, that the CFPB has made Plaintiff's petition publicly available as of the date of this Order. *See* Consumer Financial Protection Bureau, *Petitions to Modify or Set Aside*, http://www.consumerfinance.gov/guidance/petitions-to-modify-or-set-aside (last visited September 21, 2015). Were it to do so, it is likely that Plaintiffs would have an opportunity to seek judicial review (and potentially interim relief) on grounds similar to those they advance here. Absent actual publication of Plaintiffs' identities or a formal determination that their identities are a matter of public record, the Court cannot conclude that the public has had access to that information.

## C. The Fact That a Party Has Objected to Disclosure and the Identity of That Party

Under the *Hubbard* test, the fact that "objection to access is made by a third party" would "weigh[ ] in favor of non-disclosure." 650 F.3d at 319-20. In this case, however, the request is being made by Plaintiffs, not by a third party. The CFPB, in turn, opposes Plaintiffs' request to seal the case. Thus, this factor does not support either position.

## D. Strength of the Generalized Property and Privacy Interests Asserted

Plaintiffs argue that they have a significant privacy interest in avoiding being identified as the targets of a CFPB investigation. To support this proposition, they rely primarily on *In re Sealed Case*, 237 F.3d 657, 667 (D.C. Cir. 2001). There, the Court of Appeals held that exhibits relating to an ongoing Federal Election Commission ("FEC") investigation should have been sealed when the FEC filed them in connection with a petition to enforce a third-party subpoena. *Id.* at 662. The court relied on provisions of the Federal Election Campaign Act ("FECA") and

the FEC's regulations, which unambiguously stated that "[a]ny . . . investigation" made pursuant

to the FEC's enforcement authority "shall not be made public . . . without the written consent of

the person . . . with respect to whom such investigation is made." *Id.* at 667 (citing 2 U.S.C. §

437g(a)(12)(A) (2001)); *see also* 11 C.F.R. § 111.21(a) ("no . . . investigation conducted by the

Commission . . . shall be made public . . . without the written consent of the respondent with

respect to whom the . . . investigation [was] conducted"). The Court of Appeals concluded that

these clear statutory and regulatory directives "create[d] a strong confidentiality interest

analogous to that protected by Federal Rule of Criminal Procedure 6(e)(6)," which protects the

secrecy of grand jury proceedings; the court reasoned that these protections were "vital to protect

an innocent accused who is exonerated from disclosure of the fact that he has been under

investigation." *In re Sealed Case*, 237 F.2d at 667 (citing *United States v. Procter & Gamble

Co.*, 356 U.S. 677, 682 n.6 (1958)) (alterations and quotation marks omitted).

      Here, however, Plaintiffs have identified no statutory language or purpose that creates a

confidentiality interest of the sort that compelled secrecy in *In re Sealed Case*. Indeed, their

motion does not cite any statutory authority whatsoever. Instead, Plaintiffs rely on 12 C.F.R. §

1080.14, which states:

> Bureau investigations generally are non-public. Bureau investigators may
> disclose the existence of an investigation to potential witnesses or third parties to
> the extent necessary to advance the investigation.

12 C.F.R. § 1080.14. They also point to the CFPB's notice announcing the promulgation of

§ 1080.14, which states:

> Section 1080.14 of the Interim Final Rule provides that investigations generally
> will not be disclosed to the public, but permits Bureau investigators to disclose the
> existence of an investigation when necessary to advance the investigation. The
> Interim Final Rule does not contemplate publicizing an investigation, but rather
> disclosing the existence of the investigation to, for example, a potential witness or
> third party with potentially relevant information when doing so is necessary to
> advance the investigation. This limited exception sufficiently balances the

> concerns expressed by the commenter with the Bureau's need to obtain
> information efficiently.

77 Fed. Reg. 39101-01 (June 29, 2012).  These regulatory provisions do not create as strong a

privacy interest as the one that required sealing of the documents at issue in *In re Sealed Case*.

For one thing, they were not mandated by Congress.  For another, they do not categorically bar

disclosure over the objection of the investigated party—instead, they include the qualifier

"generally" and also recognize that that party's interest must sometimes yield to the agency's

important investigative objectives.  Even though the CFPB does not contend here that unsealing

the case will further its investigative activity, the fact that its regulations allow for exceptions to

the "general[ ]" rule of confidentiality suggests that the privacy interest protected by the rule is

weaker than that protected by FECA and the FEC's regulations.

### E.  The Possibility of Prejudice to Those Seeking to Avoid Disclosure

The possibility of prejudice to Plaintiffs in the event it is revealed that they are the

subjects of a CFPB investigation is significant.  The CFPB's contention that Plaintiffs have "not

identified any possible prejudice to them" (Dkt. 7) is incorrect—in their motion, Plaintiffs

explicitly stated that "[r]eleasing their identities and information tying them to a government

investigation will surely do irreparable reputational and financial harm."  Dkt. 1 at 6.  The fact

that Plaintiffs made this argument under the related prong of the strength of their privacy

interests, *see id.*, has no substantive bearing on the strength of their showing.  The precise

magnitude of the harm Plaintiffs face is difficult to determine on this record, and it is of course

possible that Plaintiffs overstate the severity of the injury that disclosure of their identities would

inflict.  Nonetheless, it is not difficult to see how disclosure of the fact that an entity is subject to

investigation by federal authorities would inflict non-trivial reputational, and possibly associated

financial, harm on that entity. This unrebutted, commonsense showing favors keeping the case under seal.

**F.  The Purpose for Which the Documents Were Introduced**

Plaintiffs introduced the documents at issue here—all of the submissions in this litigation—for the purpose of ensuring that the attorney-client privilege was respected in the course of the CFPB's interview with ██████. Plaintiffs have not identified a risk that attorney-client privileged information would be made public if this case were unsealed, so this factor does not favor maintaining the case under seal.

\*        \*        \*

Based on this analysis, the Court concludes that the predominant factors guiding this determination are the public's interest in access to judicial information, on the one hand, and Plaintiff's significant privacy interest in maintaining the confidentiality of the CFPB's investigation, on the other. The question is much closer than the one the Court of Appeals addressed in *In re Sealed Case*. The privacy interest here, although substantial, is far less significant than the absolute right of confidentiality imposed by statute at issue in that decision. Moreover, sealing the entire case, rather than simply a subset of the filed documents, would deprive the public of even the most basic information about this litigation. Maintaining this matter entirely under seal is not warranted.

The Court concludes, however, that it is appropriate to re-caption this case as a John Doe suit and to afford Plaintiffs the opportunity to submit versions of all of the documents filed to date that redact their names and other identifying information. This compromise maximizes the amount of information available to the public while still protecting the privacy interest Plaintiffs assert. For this reason, it is hereby

**ORDERED** that the Clerk shall re-caption this matter as *John Doe Company No. 1, John Doe Company No. 2, John Doe Company No. 3, John Doe Company No. 4, John Doe Company No. 5, and John Doe v. Consumer Financial Protection Bureau.* It is further

**ORDERED** that, on or before October 1, 2015, Plaintiffs shall file redacted versions of all documents, pleadings and orders that were filed in this matter prior to this Order.[1] The redacted versions should omit the names of Plaintiffs and any other information reasonably likely to lead to the disclosure of Plaintiffs' identities. Plaintiffs shall confer with the CFPB regarding their proposed redactions before filing and shall file a notice along with the redacted documents indicating whether the CFPB objects to any of the redactions.

After this case is re-captioned, the Court will issue an Order directing that the case be unsealed but requiring that the unredacted documents filed to date, including the transcript of the January 23, 2015, hearing and this Order, remain under seal. If Plaintiffs fail to submit redacted versions of the documents filed to date by the deadline set by the Court, the Court will unseal all documents in the case.

**IT IS SO ORDERED.**

RANDOLPH D. MOSS
United States District Judge

Original Opinion Filed:  September 21, 2015
Amended Opinion Filed:  October 15, 2015

---

[1] After Plaintiffs file redacted versions of the filings on the docket prior to this Order, the Court will create a redacted version of this Order and file it on the public docket.